# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

BRUCE BRIAN CANTRELL,       )
                                        )

      Plaintiff,          )

                                          )      **Civil Action No. 3:13-0235**

      v.                  )      **Judge Nixon / Knowles**

                                          )

CAROLYN W. COLVIN,          )

**Acting Commissioner of Social Security,**   )

                                          )

      Defendant.         )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 15.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on September 8,

2011, with a protective filing date of August 29, 2011, alleging that he had been disabled since

January 19, 2010,[1] due to rheumatoid arthritis and Marfan's syndrome.  *See, e.g.,* Docket No. 10,

Attachment ("TR"), pp. 162, 196.  Plaintiff's application was denied both initially (TR 75) and

upon reconsideration (TR 76).  Plaintiff subsequently requested (TR 91) and received (TR 101) a

hearing.  Plaintiff's hearing was conducted on May 21, 2012, by Administrative Law Judge

("ALJ") Michelle Thompson.[2]  TR 33, 27.  Plaintiff and vocational expert ("VE"), Melissa Neel,

appeared and testified. *Id.*

On July 3, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff

was not disabled within the meaning of the Social Security Act and Regulations.  TR 14-27.

Specifically, the ALJ made the following findings of fact:

> 1.  The claimant meets the insured status requirements of the
>     Social Security Act through September 30, 2016.
>
> 2.  The claimant has not engaged in substantial gainful activity
>     since October 10, 2010, the amended alleged onset date (20
>     C.F.R. 404.1571 *et seq.*).
>
> 3.  The claimant has the following severe impairments:
>     Marfan's syndrome with related cardiac disease of aortic
>     dilation, degenerative disc disease, rheumatoid arthritis,
>     post-traumatic stress disorder and mood disorder. (20
>     C.F.R. 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination
>     of impairments that meets or medically equals the severity
>     of one of the listed impairments in 20 C.F.R. Part 404,
>     Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525
>     and 404.1526).

---

[1] Plaintiff has since amended his alleged onset date to be October 15, 2010. TR 175.

[2] TR 33 erroneously names Brenda Benson as both the ALJ and Plaintiff's attorney.  Ms.
Benson is Plaintiff's attorney, while Michelle Thompson is the ALJ. *See* TR 27, 33.

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry, push/pull ten pounds and up to 20 pounds occasionally; sit, stand and/or walk six hours; has to avoid concentrated exposure to noise and fumes; can understand and perform simple, detailed, multi-step and executive level decisions; has the ability to sustain attention and concentration throughout a typical eight hour day; can work with and around others to include the general public; has the ability to relate appropriately with peers and supervisors and maintain appropriate social behaviors, but would do better dealing with things rather than people; and can adapt to infrequent workplace changes.

6.      The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.      The claimant was born on May 1, 1968 and was 41 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 C.F.R. 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 10, 2010, through the date of this decision (20 C.F.R. 404.1520(g)).

TR 19-26.

On August 25, 2012, Plaintiff timely filed a request for review of the hearing decision. TR 128. On January 17, 2013, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v.*

*N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which

5

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) "significantly misrepresent[ed] and/or mischaracteriz[ed]" evidence in the record when considering his subjective complaints of neck pain; (2) made "inconsistent findings" regarding the paragraph B criteria of mental disorder listings and in Plaintiff's residual functional capacity finding; (3) rendered an RFC assessment that warranted a finding of disability; (4) "violated HALLEX II-1-11-12" by failing to properly consider that Plaintiff had been awarded 90% disability benefits from the Department of Veterans Affairs with "individual unemployability"; and (5) failed to properly consider opinions from Plaintiff's good friend regarding the severity of his impairments. Docket No. 12-1 at 1-2.

Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Subjective Complaints of Neck Pain

Plaintiff contends that the ALJ erred in "significantly misrepresenting and/or mischaracterizing" parts of the record regarding Plaintiff's complaints of neck pain. Docket No. 12-1 at 17. Specifically, Plaintiff argues that, while the ALJ did acknowledge that "the claimant has complained of neck pain," the ALJ failed to note that the record shows consistent reports of "significant, persistent neck pain." *Id.* Plaintiff maintains that his complaints are supported by the medical evidence. *Id., referencing* TR 932, 970, 985. Plaintiff also asserts that the ALJ "misrepresented" evidence when she indicated that only pain management was recommended for

treatment. *Id.* at 18. Plaintiff argues first that "the fact that pain management was recommended is an erroneous basis for discrediting Plaintiff's subjective allegations, as this is treatment which is specifically recommended [for] his severe pain." *Id.* Plaintiff next argues, "More importantly, this is a misrepresentation of the evidence, as Plaintiff was instructed to follow up with the pain clinic and neurosurgery related to these impairments," and was "recommended for 'medical management with narcotics, gabapentin, epidural injections done by the pain clinic and then [follow up] with them in 3 months for additional surgical consideration.'" *Id.*, *citing* TR 880, 985. Plaintiff notes that the record reflects that he was being referred to neurosurgery for his cervical disc disease with moderate spinal canal and foraminal stenosis. *Id.*, *referencing* TR 880. Plaintiff argues that since the ALJ "mischaracterized and/or misrepresented" parts of the record, the ALJ's decision was unsupported by substantial evidence. *Id.*

Defendant responds that the ALJ did not significantly misrepresent or mischaracterize the evidence of record. Docket No. 15 at 10. Defendant argues that the ALJ did, in fact, discuss Plaintiff's complaints of neck pain, including his testimony regarding his neck issues and use of a neck brace, as well the objective evidence, including Plaintiff's diagnosis of Marfan's syndrome and diagnostic imaging of Plaintiff's cervical spine, which indicated degenerative disc disease and moderate central canal stenosis. *Id., citing* TR 22-24. Defendant concedes that the ALJ's statement that "only pain management was recommended for treatment" was imprecise, but asserts that this was not harmful error, as it "has little effect on her overall analysis and falls well short of significantly representing evidence." *Id.* Defendant further asserts that, although the treatment notes indicate that Plaintiff was to have follow-up treatment with the neurosurgical department, there is no indication in the record that Plaintiff actually followed-up with

neurosurgery as instructed, and Defendant cites other evidence in the record inconsistent with Plaintiff's complaints of neck pain. *Id.* at 10-11, *citing* TR 841-44.

Defendant also maintains that the ALJ engaged in a proper credibility determination and discussed substantial evidence supporting her conclusion that Plaintiff's allegations of disabling neck pain were not entirely credible. *Id.* at 11, *citing* TR 24. As support, Defendant points to numerous inconsistencies between the record and Plaintiff's complaints. *Id., citing* TR 42-43, 51, 678, 680, 738, 743, 831, 841, 844.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of his symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible to the extent that they differed from the determined residual functional capacity assessment. TR 24. In making this finding, the ALJ discussed Plaintiff's subjective complaints related to his neck pain as follows:

> . . . In addition, the claimant has complained of neck pain. An MRI of the claimant's cervical spine showed degenerative disc disease and moderate central canal stenosis. Exs. 2F, p. 62 and 14F, p. 10. However, a physical examination of the claimant's neck was unremarkable. In fact, the examiner noted that the claimant actually had better than normal range of motion in his neck. Despite the claimant's allegations as to the severity of his pain, a progress note from February 2012 shows that only pain management was recommended for treatment. Ex. 14F, p. 67. Further, the claimant

was advised that he could wear a soft cervical collar for comfort, but that it was not necessary. Ex. 14F, p. 11.

. . .

. . . He testified that he cannot lift or carry more than five pounds. The claimant testified that he was prescribed a neck brace because his neck can "pop" out of joint at any time. He testified that his neck condition is related to his Marfan's syndrome. The claimant stated that he wears the neck brace every day, except when he is driving.

TR 22, 24, *citing* 302-599, 834-1013.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all of the medical and testimonial evidence of record, the ALJ determined:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

TR 24.

The ALJ explained:

The undersigned gives some weight to the claimant's testimony in finding him limited to the reduced range of light exertion above. However, the undersigned does not fully credit the claimant's testimony. While the claimant has some difficulties with his mental functioning, the claimant's activities fail to support the incapacitating limitations alleged. For instance, the claimant stated that he enjoys gardening, cooking, making napkin holders out of utensils, reading, using the internet, playing games with his family, talking on the phone and texting. Although the claimant indicated that he has trouble completing single tasks, he admitted that he has no trouble multi-tasking. Ex. 3F. In August 2011, the claimant called the audiology clinic stating that he had lost all hearing devices over the weekend when his sailboat capsized. Ex. 7F, p. 11. At a January 2012 psychiatry visit, the claimant reported that he was staying busy with hobbies such as baking. Ex. 14F, p. 117. At an April 2012 psychiatry visit, the claimant reported that babysits [*sic*] for his friend. Ex. 14F, p. 20. Additionally, medical records document the claimant's subjective complaints of pain and normal to minimal findings. Also, the claimant continued to smoke despite being counseled on the benefits of smoking cessation. Exs. 2F, p. 3 and 126, 7F, p. 9. The claimant testified that he was prescribed a neck brace because of his disease; however, emergency room records show that the claimant was prescribed a neck brace in December 2010 for three weeks after a motor vehicle accident (Ex. 10F, p. 50) and again in May 2012 after his 100 pounds [*sic*] dog knocked him over (Ex. 14F, p. 8). He stated that he wears his neck brace every day except for when he is driving, but emergency room records show that it is not medically necessary to wear the neck brace. Ex. 14F, p. 11. The claimant testified that he cannot lift or carry more than five pounds, but at an emergency room visit in November 2011, the claimant reported

that he and a friend were stretching a bungee cord with hooks on the end, trying to hang up a bicycle. Ex. 10F, p. 55. On May 2012, the claimant reported that his dog knocked him over while he was carrying a baby and a piece of pizza. Ex. 14F, p. 8. These inconsistencies within the claimant's statements tend to cast doubt on the true nature of the claimant's current unemployment.

TR 24, *citing* 302-606, 644-74, 689-830, 834-1013.

As can be seen, the ALJ addressed Plaintiff's subjective complaints of neck pain, as well as the objective evidence related thereto, and explained her rationale for discounting Plaintiff's credibility. Although Plaintiff is correct that the ALJ misstated that "only pain management was recommended for treatment," that was not the sole basis for her discounting Plaintiff's credibility; it is therefore harmless error. As will be shown in the statements of error below, the ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations of neck pain was proper. Therefore, this claim fails.

## 2. Residual Functional Capacity ("RFC")

Plaintiff maintains that the ALJ made "inconsistent findings" between the "paragraph B" criteria of the mental disorder listings and her RFC assessment. Docket No. 12-1 at 16. Specifically, Plaintiff argues that the ALJ evaluated his severe impairments using the Psychiatric Review Technique Form criteria and found that he had "mild difficulties" in social functioning and "moderate difficulties" in concentration, persistence, or pace, but failed to include in her RFC finding any specific limitations resulting from the "moderate difficulties" in concentration, persistence, or pace, as they apply in a work setting. *Id.*, *citing* TR 20. Plaintiff contends that the ALJ's finding that Plaintiff could "understand and perform simple, detailed, multi-step and

executive level decisions; [and] has the ability to sustain attention and concentration throughout a typical eight hour day" is inconsistent with her finding that Plaintiff had "moderate difficulties" in concentration, persistence, or pace, such that her decision is unsupported by substantial evidence. *Id., citing* TR 20-21.

Plaintiff also argues that the ALJ's findings were inconsistent because, while the ALJ accorded "great weight" to the opinions of the State agency medical consultants in evaluating Plaintiff's mental functioning, she failed to include the "moderate limitations" in maintaining social functioning and concentration, persistence, or pace, assessed by Dr. Horace Edwards. *Id., citing* TR 25, 626-36. Plaintiff contends that: (1) the ALJ's finding that he had "mild difficulties" in social finding was contrary to Dr. Edwards' opinion, which she accorded "great weight"; (2) the ALJ's RFC determination failed to include any limitations that would account for the "moderate" limitations in social functioning assessed by Dr. Edwards; and (3) the ALJ "failed to address this significant inconsistency between Dr. Edwards' opinion [] and her decision which found Plaintiff to be less limited in social functioning," such that the ALJ's decision "is internally inconsistent and lacks the support of substantial evidence." *Id.* at 17, *citing* TR 20-21.

Defendant responds that the ALJ properly evaluated Plaintiff's mental limitations because, as the ALJ noted, the paragraph B criteria and the RFC evaluation are two separate assessments that use different criteria, have differing degrees of detail/specificity, and are used for different purposes at different stages of the sequential evaluation, such that the ALJ's different findings were not inconsistent. Docket No. 15 at 7-8. Defendant asserts that the ALJ's finding followed Dr. Edwards' opinion and was supported by his more detailed RFC assessment.

*Id.* Defendant contends that even if the ALJ's findings were inconsistent, this would constitute "at most harmless error," since the ALJ's finding that Plaintiff could perform work at a significant number of jobs was supported by substantial evidence. *Id.* In support of this assertion, Defendant cites the ALJ's discussion, Plaintiff's statements, as well as the opinions of Dr. Edwards and Dr. Hansmann. *Id.* at 8-9. Defendant argues that, "even if there is any inconsistency among the ALJ's findings, Plaintiff has failed to demonstrate any harm." *Id.* at 9.

With regard to Plaintiff's contention that Dr. Edwards' opinion was inconsistent with the ALJ's analysis of Plaintiff's social functioning ability, Defendant argues that the ALJ's RFC assessment "precisely reflects" the opinion of Dr. Edwards. *Id.* at 9, *citing* TR 21, 642. Defendant maintains that the ALJ's analysis of Plaintiff's mental limitation was "proper and supported by substantial evidence." *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

In the case at bar, the ALJ found that Plaintiff's mental impairments did not meet or

medically equal the criteria of a listing, explaining:

> In activities of daily living, the claimant has mild restriction. The claimant cleans, cooks, does laundry and shops in stores for groceries. He is able to manage his personal care needs without assistance. Exs. 8E and 11E. The evidence supports no more than a mild restriction in this area.
>
> In social functioning, the claimant has mild difficulties. The claimant lives with his wife and daughter. He texts friends and talks on the phone. The claimant reported that he gets along with authority figures "very well." Exs. 8E and 11E. The evidence supports no more than mild difficulties in this area.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant has received treatment for post-traumatic stress disorder and mood disorder. Even so, the claimant is able to handle a savings account and use both a checkbook and money order. He enjoys reading, gardening, sewing and decorating. Ex. 8E. The claimant babysits for a friend. He enjoys making napkin holders out of utensils. The undersigned takes notice of the level of adaptation required for such activities, which suggests that the claimant is capable of adapting to infrequent changes in the workplace. The evidence supports no more than moderate difficulties in this area.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

TR 20, *citing* 221-29, 244-51.

After evaluating all of the objective and testimonial evidence, including Plaintiff's

reported level of activity, the ALJ performed an RFC analysis and ultimately determined that

Plaintiff retained the RFC to perform work as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry, push/pull ten pounds and up to 20 pounds occasionally; sit, stand and/or walk six hours; has to avoid concentrated exposure to noise and fumes; can understand and perform simple, detailed, multi-step and executive level decisions; has the ability to sustain attention and concentration throughout a typical eight hour day; can work with and around others to include the general public; has the ability to relate appropriately with peers and supervisors and maintain appropriate social behaviors, but would do better dealing with things rather than people; and can adapt to infrequent workplace changes.

TR 21.

Plaintiff contends that, since the ALJ failed to include "moderate" social functioning

limitations in her RFC assessment, the above findings are inconsistent. Docket No. 12-1 at 16-

17. As the ALJ correctly explained, however, the paragraph B evaluation is a separate

assessment from the RFC evaluation; each is performed at different stages of the sequential

evaluation process; and each requires varying degrees of detail. TR 21. Specifically, the ALJ

explained:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function

analysis.

*Id.*

As discussed, the two determinations are separate and distinct. Plaintiff has failed to demonstrate, using the appropriate criteria for the evaluation of each, how these findings are inconsistent.

Plaintiff also contends that the ALJ's decision was "internally inconsistent" because the ALJ stated that she gave great weight to the opinion of Dr. Edwards, but did not include moderate limitations in social functioning in her RFC assessment. Docket No. 12-1 at 16-17.

Dr. Edwards completed a psychiatric review of Plaintiff on November 7, 2011, using the paragraph B criteria of the mental disorders listings. TR 626-36. In this review, Dr. Edwards opined that Plaintiff had mild limitations in his activities of daily living; and moderate limitations in his abilities to maintain social functioning and maintain concentration, persistence, or pace. TR 636.

Dr. Edwards also completed a mental RFC assessment of Plaintiff on November 7, 2011. TR 640-43. In this assessment, Dr. Edwards opined that Plaintiff was moderately limited in his abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. TR 640-41. Dr. Edwards also opined that Plaintiff was moderately limited in his abilities to interact

appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. TR 641.

With regard to Plaintiff's mental capacity, Dr. Edwards opined:

> Can understand and perform simple, detailed, multistep detailed and executive level

> Has the ability to sustain attention and concentration for the above tasks throughout a typical 8-hour day

> Can work with and around others, to include the general public. Has the ability to relate appropriately with peers and supervisors and maintain appropriate social behaviors but will do better dealing with things rather than people

> Can adapt to infrequent workplace changes

TR 642.

The ALJ discussed Dr. Edwards' opinion as follows:

> The undersigned gives great weight to the opinions of the State Agency Medical Consultants regarding the claimant's mental functioning. Exs. 6F and 12F. The claimant admitted that he is able to perform multi-step tasks. During the psychological evaluation in February 2011, the claimant was not easily distracted. He maintained his train of thought well and his presentation of thought was organized. A mental status examination was normal. The claimant reported that his concentration has improved since starting the medication. He also admitted that his medications are effective in controlling his emotions and irritability. The claimant lives with his wife and daughter, plays games with his family, talks on the phone and text messages. He babysits for his friend, cooks, cleans, shops for groceries and bakes.

TR 25, *citing* 640-43, 832.

Notably, the fact that an ALJ accords "great weight" to an opinion does not require the ALJ to adopt that opinion wholesale. *See, e.g.*, *Taylor v. Colvin*, No. 1:13CV222, 2013 WL 6162527, at *14 (N.D. Ohio Nov. 22, 2013). In the case at bar, however, as can be seen above, the ALJ specifically adopted Dr. Edwards' opined mental RFC assessment. *Compare supra* p.16-17; TR 21 *with supra* p. 22-23; TR 642. With regard to Dr. Edwards' psychiatric review of Plaintiff, this evaluation is less detailed than an RFC assessment, and is separate and distinct from the mental evaluation performed for the RFC assessment. Accordingly, the ALJ was not required to adopt those findings. SSR 96-8p.

Moreover, the ALJ properly considered the medical and testimonial evidence of record when determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis." The ALJ discussed Plaintiff's mental health treatment history at great length as follows:

> Regarding the claimant's severe mental impairments, the claimant underwent a psychological evaluation in February 2011. The claimant reported that he avoids large crowds and has trouble concentrating. He endorsed symptoms of anxiety and mood disorder. While the claimant indicated that he cannot complete a single task, he admitted that he can complete multi-tasks. In activities of daily living, the claimant reported that he cleans, performs household chores and spends time with his daughter. The claimant enjoys reading, using the internet, playing games with family, talking on the phone and texting. He indicated that he can read, write, count money and make change. During the interview, the claimant was not easily distracted. He maintained his train of thought well and his presentation of thought was organized. A mental status examination was normal. A diagnostic impression of post-traumatic stress disorder was formed. Ex. 3F.

The claimant receives mental health treatment for post-traumatic stress disorder and mood disorder. Notably, medical records show that the claimant's symptoms stabilized with medication and medication adjustment. For instance, in May 2011 the claimant reported that he was less angry and that his concentration had improved since starting the medication, Adderall. Ex. 4F, p. 4. On July 26, 2011, the claimant presented for a psychiatry visit with reports of a dramatic improvement in his symptoms with the medication, Celexa. Ex. 7F, p. 14. In September 2011, the claimant returned to the psychiatry clinic with reports that his problems had returned. The claimant indicated that he was getting easily upset and angry. He complained of trouble concentrating and sleeping. The claimant informed his mental health provider that he decided not to pursue a "career/education" at the time, but interestingly enough, was considering volunteering at the Humane Society with his daughter. Still, a mental status examination revealed organized thought processes. His concentration, insight and judgment were intact. The claimant was advised to discontinue his use of Trazadone and started on Remeron in addition to Celexa. Ex. 7F, pgs. 10-11. By December 15, 2011, the claimant reported his mood as stable. Ex. 10F. At an April 2012 psychiatry office visit, the claimant reported compliance with his medications, Celexa and Wellbutrin. He stated that his concentration and attention were better (Ex. 14F, p. 117) and he reported his mood as "stable" (Ex. 14F, p. 15). On May 11, 2012, the claimant stated that his medications are effective in controlling his emotions and irritability. Ex. 14F, p. 5.

TR 23, *citing* 600-25, 644-74, 689-830, 834-1013.

The ALJ also considered and discussed Plaintiff's testimony regarding his mental limitations as follows:

The claimant stated that he lives with his wife and daughter. He admitted that his depression is controlled on medication, but asserts that he is still anxious. The claimant testified that he reads books like Harry Potter, but is easily frustrated. He says that he has trouble focusing and concentrating. The claimant testified that he has problems going out in public, but admitted that he is able to go to the grocery store. He says that change bothers him.

TR 23.

The ALJ properly considered the evidence of record and reached a reasoned decision. As she conducted the sequential evaluation, the ALJ's opinion at each step was consistent and supported by substantial evidence. Plaintiff's contention that the ALJ's RFC determination was inconsistent with her "paragraph B" findings and/or with Dr. Edwards' psychiatric review technique findings fails.

### 3. Disability under SSR 96-8p

Plaintiff maintains that the ALJ's RFC assessment, which includes a limitation to "sit, stand and/or walk six hours" during an eight hour work day, warrants a finding of disability. Docket No. 12-1 at 15. Plaintiff argues that since RFC is an assessment of a claimant's ability to perform work on a "regular and continuing basis" (eight hours per work day for five days per week or an equivalent work schedule), this limitation "in and of itself warrants a finding of disability" because it indicates that Plaintiff can sit, stand, and walk only "for a total of six hours out of an eight hour work day." *Id.*, *citing* SSR 96-8p.

Defendant responds that the ALJ appropriately addressed Plaintiff's ability to perform work on a regular and continuing basis. Docket No. 15 at 7. Defendant argues that the ALJ did not state that Plaintiff could sit, stand, and walk for a total of six hours, as Plaintiff asserts, but rather, the ALJ "made clear" that Plaintiff could perform "sitting or standing/walking for six hours each." *Id.* Defendant notes that the ALJ expressly accepted the State agency medical consultants' opinions that Plaintiff could perform light work, including sitting for six hours in an eight hour work day, and standing and/or walking for six hours in an eight hour work. *Id.,*

*referencing* TR 24, 680, 831. Defendant also notes that "even Dr. Morton's more restrictive opinion allowed that Plaintiff could sit and stand at certain intervals for up to eight hours in a day." *Id., referencing* TR 25, 677-78.

With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

The ALJ in the case at bar found that Plaintiff could "sit, stand and/or walk six hours." TR 21. The undersigned acknowledges that the ALJ's choice of words—"sit, stand and/or walk six hours"—standing alone, could be interpreted as both Plaintiff and Defendant assert. When read in context with the remainder of the ALJ's decision, however, it is clear that the ALJ meant that Plaintiff could sit for six hours, and stand and/or walk for six hours in an eight hour work day. *See, e.g., Howington v. Astrue*, No. 2:08CV189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009). Significantly, the ALJ determined that Plaintiff could perform a range of unskilled light work. TR 26. The regulations define "light work" as requiring "a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b) and 416.967(b). The SSA has noted that "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour

workday." SSR 83–10. Additionally, by holding that Plaintiff could perform a range of unskilled "light work," the ALJ found that Plaintiff could hold a full-time job. In fact, the ALJ explicitly discussed the representative positions that Plaintiff could perform, including cleaner (DOT 323.687-014), marker (DOT 920.687-126), and coder (DOT 920.587-014). TR 26. If the ALJ had meant to hold that Plaintiff could sit, stand, "and" walk for a "total" of six hours, then Plaintiff would not be able to work an eight hour work day, and therefore, would not be able to perform "sedentary work" or hold a full-time job. *See* 20 C.F.R. §§ 404.1567(a) and 416.967(a). Instead, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." TR 26.

Moreover, as set forth in the statements of error above, in reaching her RFC determination, the ALJ properly discussed the medical and testimonial evidence of record. In addition to discussing the evidence pertaining to Plaintiff's mental health and neck pain, recounted *supra*, the ALJ discussed Plaintiff's treatment records as follows:

> The claimant's medical history is remarkable for Marfan's syndrome with related cardiac disease of aortic dilation. However, at the November 2011 consultative examination, the claimant admitted that his valves are fine. Ex. 8F, p. 1. While a "TTA" from February 2011 showed a mild aortic dilation, a "TTE" from August 2011 was negative for aortic dissection. Ex. 14F, p. 71. The claimant's cardiac workup from February 2012 was normal. Ex. 14F, p. 64. . . . A biopsy taken from the claimant's Achilles heel was consistent with rheumatoid arthritis. Subsequently, the claimant had positive sarologies and was treated with "MTX," Prednisone and Mobic. Ex. 4F p. [*sic*] Still, an imaging report of the claimant's hands was normal. Ex. 4F, p. 16. [*sic*] 17. Further, medical records show that the claimant's pain is managed with medications. At a June 2011 and August 2011 office visit, the claimant admitted that his arthritis is controlled with medication. Ex. 4F, pgs. 1 and 4.

Medical records show that the claimant has "good control of symptoms." Ex. 4F, p. 2. A November 2011 examination of the claimant showed that the claimant had a normal gait and station. He did not use an assistive device. He could tandem walk, stand on his toes and rock back on his heels. The claimant moved very easily and fluidly. He did not appear in any distress at all. The examiner noted that the claimant did not look like he was in any pain or discomfort at all. Ex. 8F.

TR 22-23, *citing* 607-25, 675-78, 834-1013.

The ALJ also discussed the opinion evidence as follows:

As for the opinion evidence, no treating source provided a medical source statement outlining the claimant's mental functioning. While the undersigned accepts the State Agency Medical Consultants assessment that the claimant is capable of at least light exertion and must avoid concentrated exposure to noise and pulmonary irritants (Exs. 9F and 11F), their more restricted postural and communicative findings are unsupported by the record as a whole. For example, test results show that the claimant was not a candidate for amplification due to his normal thresholds. Ex. 10F, p. 69. At the November 2011 examination, the claimant had a normal gait and station. He did not use an assistive device. He could tandem walk, stand on his toes and rock back on his heels. The claimant moved very easily and fluidly. He did not appear in any distress at all. Ex. 8F. Also considered was the functional assessment of consultative examiner, Dr. Morton. Although the undersigned accepts Dr. Morton's lifting restrictions as generally consistent with the residual functional capacity assessment above, the undersigned finds the remainder of Dr. Morton's assessment unsupported by her own examination and observations of the claimant. As discussed above, the claimant had a normal gait and station. He did not use an assistive device. He could tandem walk, stand on his toes and rock back on his heels. The claimant moved very easily and fluidly. Dr. Morton indicated that the claimant did not "look like he was in any pain or discomfort at all." Ex. 8F.

TR 24-25, *citing* 675-831.

The ALJ considered the evidence of record and reached a reasoned RFC determination

that was supported by substantial evidence. Because there is substantial evidence in the record to support the ALJ's RFC determination, the ALJ's determination must stand.

## 4. Department of Veterans' Affairs' ("VA's") Disability Determination

Plaintiff maintains that the ALJ "violated HALLEX II-1-11-12" in failing to properly consider the fact that the VA awarded Plaintiff "90% disability benefits" with "individual unemployability." Docket No. 12-1 at 13. Plaintiff contends that, although the ALJ acknowledged that Plaintiff "does have a percentage based rating of 90% from the Department of Veterans Affairs" and stated that she had considered this fact, the ALJ failed to explain how the VA's determination was "considered or accounted for" or how she could "resolve the inconsistency" between the VA's determination and her decision. *Id.* Plaintiff asserts that the VA's disability determination, while not binding upon the ALJ, is entitled to great weight, such that the ALJ should have discussed in greater detail the VA's disability rating and the basis thereof. *Id.*, *citing Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983). Plaintiff argues that, accordingly, the ALJ "failed to properly consider" the VA's determination and "apparently afforded this finding of disability no weight at all." *Id.*

Plaintiff also argues that new and material evidence submitted to the Appeals Council contradicts the ALJ's finding that "the standard for disability differs between the Department of Veterans Affairs and the Social Security Administration." *Id.* at 14. Plaintiff contends that the VA's determination that Plaintiff was entitled to individual employability as of February 17, 2011 was based on his inability to "secure or follow a substantially gainful occupation" as a result of his impairments. *Id.* Plaintiff asserts, therefore, that the VA used "precisely the same

standard" for a finding of disability as does the SSA. *Id.* Plaintiff contends that the VA's

"finding deserves even more weight than the percentage based disability rating of 90%, as the

standards being evaluated are essentially the same." *Id.* Plaintiff argues that the VA's

determination was "extremely significant evidence" that supported a finding of disability dating

back to "at least" February 17, 2011. *Id.*

Defendant responds that the ALJ properly considered the VA's disability rating. Docket

No. 15 at 3. Defendant argues that a disability determination from another governmental

agency, while possibly insightful, is not binding on the SSA because other agencies may use

different rules and standards than does the SSA and because disability is an issue reserved to

the Commissioner. *Id.* at 3-4, *citing* SSR 06-03p and 20 C.F.R. § 404.1527(e). Defendant

contends that Plaintiff's argument that the ALJ violated HALLEX II-1-11-12 is deficient

because: (1) HALLEX II-1-11-12 does not exist (*id.*, *citing Hall v. Astrue*, No. 2:11CV24, 2012

WL 1313242, at *6 (W.D.N.C. Mar. 26, 2012)); (2) Plaintiff cites an 11th Circuit case that is not

binding authority upon this Court; and (3) even if it were binding authority, the 11th Circuit

"recently stated that an ALJ's consideration of a [VA's disability] rating was proper where he

'correctly explained that a claimant had to satisfy a more stringent standard to be found disabled

under the Social Security Act" (*id.*, *citing Pearson v. Astrue*, 271 Fed. Appx. 979, 981 (11th Cir.

2008)).

Defendant argues that the ALJ in the instant case properly considered the VA

determination, because the VA decision is based on a combined rating of several physical

impairments that the VA found to be "slightly disabling, with a percentage of 10% or 20%, along

with mental impairments rated at 50%." (*id.*, *citing* 134-36), while there is no partial disability

under Title II of the Social Security Act, as a person "must be entirely unable to engage in any substantial gainful activity." *Id.* at 4-5. Defendant contends that, "[t]o the extent the combined VA rating of 90% suggests that Plaintiff was not entirely disabled, it supports the ALJ's decision." *Id.* at 5. Defendant asserts that the ALJ was correct that the VA and SSA use different disability standards, and she made an appropriate decision based upon the evidence of record. *Id.*

Defendant further responds that Plaintiff's alleged new and material evidence, a subsequent VA decision finding Plaintiff entitled to "individual unemployability" as of February 17, 2011, does not actually constitute new and material evidence warranting remand because: (1) Plaintiff has failed to establish good cause for why this evidence was not incorporated previously; (2) the decision is not "new" since the letter containing the subsequent VA decision was stamped prior to the ALJ's decision; and (3) the decision is not "material" since it does not affect the ALJ's analysis because it reaches the same 90% disability rating for Plaintiff as did the original VA decision, and it "remains based on a different standard of disability." *Id.* at 5-6.

As an initial matter, the VA's decision is not binding on the ALJ:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its own rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504.

Although the VA's determination is not binding on the ALJ, however, the ALJ

"nonetheless at least must consider it" when reviewing the record in its entirety and reaching her disability determination. *See, e.g., Rothgeb v. Astrue*, 626 F. Supp. 2d 797, 809 (S.D. Ohio 2009). Additionally, the ALJ must "articulate reasons for the amount of weight he or she assigns to that decision." *Id*.

In the case at bar, the ALJ discussed the VA's determination as follows:

> The claimant does have a percentage based rating of 90% from the Department of Veterans Affairs. While the undersigned has considered this, the undersigned also notes that the standard for disability differs between the Department of Veterans Affairs and the Social Security Administration. Ex. 1D.

TR 22, *citing* 132-61.

The ALJ also discussed the medical records and progress notes from the VA hospital and Veterans Affairs extensively. *See* TR 22-25, *citing* 644-74, 689-830, 834-1013; *quoted* in the statements of error *supra*. As is demonstrated throughout her decision, the ALJ was aware of, considered, and discussed Plaintiff's treatment at the VA, as well as the VA's disability determination. As discussed above, the ALJ is not bound by the VA's determination that Plaintiff was 90% disabled, because the VA and SSA have different standards for determining disability. Rather, the ALJ is required to consider the evidence of record in its entirety, reach a reasoned decision that is supported by substantial evidence, and articulate a reasoned rationale for that decision. The ALJ in the case at bar did just that. The ALJ's decision evidences consideration of Plaintiff's VA treatment records. TR 22-25. Plaintiff's argument on this point fails.

As noted, Plaintiff also contends that the subsequent VA decision constitutes new and

material evidence. Docket No. 12-1 at 14. The evidence at issue is a VA determination, dated June 29, 2012, finding that Plaintiff had a disability rating of 90% and was entitled to individual unemployability. TR 1015, 1019. The VA supported this finding as follows:

> Entitlement to individual unemployability is granted because the claimant is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities noted as Marfan's syndrome inclusive of [Plaintiff's] depressive disorder. The effective date is February 17, 2011.

TR 1026.

Plaintiff attached these records with the brief sent to the Appeals Council. TR 5. These materials were received by the Appeals Council on January 17, 2013. *Id.*

The Regulations provide that where new and material evidence is submitted with the request for review, the entire record will be evaluated and review granted where the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence. 20 C.F.R. § 416.1470. After reviewing the VA's subsequent decision and the record as a whole, the Appeals Council determined that there was no basis under the Regulations for granting Plaintiff's review. TR 1-3. The Appeals Council explicitly stated that:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

TR 1-2.

Remand for consideration of new and material evidence is appropriate when the plaintiff

shows that: (1) new material evidence is available; *and* (2) there is good cause for the failure to incorporate such evidence into the prior proceeding. *Willis v. Secretary*, 727 F.2d 551, 554 (6th Cir. 1984). Plaintiff can show neither.

As an initial matter, Plaintiff cannot establish that the subsequent VA determination is material. "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Secretary*, 865 F.2d 709, 711 (6th Cir. 1988) (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)). Plaintiff has failed to satisfy this burden. Contrary to Plaintiff's assertion that the subsequent VA determination shows that the VA used the same standard as that used by the SSA, plaintiffs claiming disability under the Social Security Act are subject to a more stringent standard than those under the Department of Veterans Affairs. *See, e.g.*, *Paul v. Astrue*, 827 F. Supp. 2d. 739, 743 (E.D. Ky. 2011). The two agencies do not use the same standards, and the VA's determination is not binding on the ALJ. 20 C.F.R. § 404.1504.

Moreover, even if the subsequent VA determination had been part of the record before the ALJ, the VA's disability rating did not change, and was based on the same impairments that the ALJ properly considered, as discussed in the statements of error above. Additionally, as has been demonstrated, the ALJ's decision was supported by "substantial evidence." The ALJ's decision demonstrates that she carefully considered the testimony of both Plaintiff and the Vocational Expert, observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision. Furthermore, the Appeals Council reviewed the subsequent VA determination, as well as the record as a whole, and expressly determined that the information

contained in the subsequent VA determination did not warrant changing the ALJ's decision.  TR 1-3. Thus, there is no "reasonable probability that the Secretary would have reached a different disposition of the disability claim" if the subsequent VA determination had been part of the record before the ALJ.  Plaintiff has failed to demonstrate that the subsequent VA determination was material.

Plaintiff has also failed to establish good cause for why this evidence was not incorporated previously. Accordingly, remand pursuant to Sentence Six of 42 U.S.C. § 405(g) is not warranted.  Plaintiff's arguments regarding the VA disability determinations fail.

## 5. Weight Accorded to Opinion of Plaintiff's Friend, Mr. Lani Kraft

Plaintiff maintains that the ALJ failed to "properly consider or evaluate" the opinion of his good friend Lani Kraft. Docket No. 12-1 at 18. Plaintiff notes that Mr. Kraft completed a questionnaire regarding Plaintiff's claim for disability benefits, and argues that Mr. Kraft's reported opinions are "extremely inconsistent" with the ALJ's decision but support Plaintiff's claims of disability. *Id.* at 18-19. Plaintiff contends that SSR 06-03p requires the ALJ to consider evidence from non-medical sources, and that the ALJ failed to adhere to this mandate since she did not mention Mr. Kraft's report anywhere in her decision. *Id.* at 19-20, *citing* SSR 06-03p. Plaintiff argues that "Mr. Kraft's observations and allegations are consistent with other treatment records in evidence, as well as Plaintiff's subjective allegations, and [that] this evidence supports a finding of disability in his claim." *Id.* at 20.  Plaintiff asserts that the ALJ's decision, therefore, is unsupported by substantial evidence.  *Id.*

Defendant responds that the ALJ was not explicitly required to discuss Mr. Kraft's

completed functional report questionnaire. Docket No. 15 at 12. Defendant argues that, while an ALJ must "consider" evidence from non-medical sources, including friends, and has a general obligation to consider all of the available evidence, the ALJ is "not required to discuss every piece of evidence in the record." *Id.*, *citing* SSR 06-03p; *Simons v. Barnhart*, 114 Fed.Appx. 727, 733 (6th Cir. 2004). Defendant further asserts that the information contained in Mr. Kraft's report, describing Plaintiff's daily activities and functional abilities, was already contained in the record in forms completed by Plaintiff himself, and in Plaintiff's testimony. *Id.* at 12-13. Defendant notes that the ALJ discussed Plaintiff's testimony, subjective complaints, and daily activities at length. *Id.* Defendant contends that some of the ALJ's discussion of Plaintiff's daily activities comes from the function reports, evidencing their consideration. *Id.* at 13. Defendant asserts, therefore, that the ALJ's failure to mention Mr. Kraft's report does not indicate that she did not consider it. *Id.*

There is no dispute over the fact that Mr. Kraft is not considered an "acceptable medical source" for purposes of rendering an opinion on disability, but rather, is considered an "other source." The Regulations provide that the ALJ may properly

> "use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to -
> . . .
> (5) Spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers.

20 C.F.R. § 404.1513(d).

When considering opinions rendered by "other sources," the ALJ "generally should

explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p.

On January 25, 2011, Mr. Kraft completed a third party function report questionnaire regarding Plaintiff. TR 253-59. In that report, Mr. Kraft stated that, as part of Plaintiff's daily activities, Plaintiff frequently "gripes about the amount of pain he is in." TR 253. Mr. Kraft wrote that Plaintiff would get very depressed at times, would cook dinner at times, can complete some house and yard work, and can drive a car. TR 253-56. Mr. Kraft also wrote that Plaintiff gets anxious in crowds and can shop in stores, but noted that his "PTSD does not allow him to handle money well." TR 256. Mr. Kraft indicated that Plaintiff talks and plays cards with others three times per week, but can be "very moody." TR 257-58. Mr. Kraft opined that Plaintiff's impairments affect his abilities to lift, squat, bend, kneel, concentrate, and get along with others. TR 258. Mr. Kraft also opined that Plaintiff does not handle stress or changes in routine well. TR 259.

On the report, Mr. Kraft did not cite objective support for his opinions. *See* TR 253-59. In order to be accepted, Mr. Kraft's opinions on issues regarding the nature and severity of Plaintiff's impairments must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and be consistent with other substantial evidence in the record. 20 C.F.R. §§ 416.927(d); 404.1527(d).

While Plaintiff is correct in his assertion that the ALJ did not explicitly reference Mr.

Kraft's report, the information contained in Mr. Kraft's questionnaire was contained in the record in ways discussed by the ALJ. Specifically, the ALJ discussed in detail Plaintiff's own testimony regarding his daily activities and his subjective complaints, as well as evidence regarding Plaintiff's social functioning abilities. *See, e.g.*, TR 20, 23-25 (block quoted herein in the discussions of the other statements of error). The ALJ also found that Plaintiff's post-traumatic stress disorder was a severe impairment. TR 19.

Plaintiff contends that the ALJ's discussion of Mr. Kraft's report is insufficient because SSR 06-03p is a "clear mandate to consider Mr. Kraft's report." Docket No. 12-1. Contrary to Plaintiff's assertion, SSR 06-03p does not require the ALJ to *discuss* every piece of evidence, including the opinions of "other sources"; rather, the ALJ must *consider* all of the evidence and the ALJ's discussion of the evidence should allow a subsequent reviewer to follow her reasoning. *Id.* The ALJ's decision in the case at bar is clear and detailed, and so allows. The ALJ explained the evidence she considered, the weight accorded thereto, and the reasons therefore. Accordingly, the ALJ complied with SSR 06-03p, and Plaintiff's argument fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


E. CLIFTON KNOWLES
United States Magistrate Judge